Our second case for argument this morning is Holloway v. Milwaukee. Mr. Cade. Thank you, Your Honor. May it please the Court, Attorney Nathaniel Cade appearing on behalf of the appellant Daryl Holloway. In the summer of 1992, there were a series of rapes occurring on the east side of Milwaukee. A black male, or several black males, it's unknown, were raping white females. Daryl Holloway was arrested, convicted, and charged. But for the Innocence Project, he would still be in prison today. Essentially, the officers involved, the detectives, had a hunch that Mr. Holloway was guilty and were not going to let the mere absence of evidence stand in their way. What I'd like to address are a couple of errors of the district court that I think should counsel this court to send the case back for trial. First, as discussed in our brief, is the lineup. The lineup, the individuals involved in a number of these rapes, the suspect was 5758. Mr. Cade, I have a foundational question about the lineup claim. Yes, Your Honor. Which is whether there is any rule of federal law concerning the conduct of lineups that is independent from its use of that lineup at trial. That is, suppose the police hold a lineup, but the results of the lineup are never introduced at trial. Have the police violated the Constitution if the lineup is not conducted in a way that would be required if the results were used at trial? I don't know that answer, Your Honor, because I'm not aware of it. The reason I'm asking this question is because that very issue was before the Supreme Court now, in a case called Vega against Tico, about Miranda, right? Where the question is, does it violate the Constitution to interrogate somebody without Miranda warnings? Or is Miranda a trial right, a right not to have the evidence used? And here, the question is, are the rules about the conduct of lineups independent violations, or are they trial rights not to have particular evidence used? Because, of course, if they're trial rights, you can't sue the police. Well, if they're trial rights, and I think all of the cases this court has dealt with dealing with lineups, you know, the police officers obviously were sued in all those cases. That would basically vitiate an entire section of law. And getting back to the issue— Has the Supreme Court ever suggested that the lineup cases are anything other than trial rights,  Well, I think—not that I'm aware of, Judge, but I'm also—I think we're fundamentally looking at it from a different end. Miranda goes to if someone, for example, confesses, or if there's evidence that is gathered, and someone was not Mirandized, and in fact it turns out that that individual was a suspect, or the police knew certain things, and they probably should have put the person or warned them of that, that could vitiate all evidence on a go-forward basis. No, that's not the way Miranda is used. You're obviously not acquainted with what vega is and how it got to the Supreme Court. It's not fair to you because, of course, this is not a Miranda case. Thank you, Your Honor. But the fact that that's before the Supreme Court leads to this question. Now, it seems to me you are entitled to say that Milwaukee and the defendants have forfeited any argument along the lines of the argument being made in vega because it's certainly not in their briefs. But I wanted to raise this question because it may turn out that what the Supreme Court says in vega has consequences for other areas of the law. And I apologize, Judge, I have not reviewed vega. You don't need to apologize. It's just not what this case was about. This is a left-field question from your perspective. But in a month, when vega comes down, it may turn out to be a common question. That is true, Your Honor. Please proceed. Thank you. One of the issues with the lineup, as I indicated, is all the suspects that were conducting these rapes were 5'7 or 5'8. Mr. Holloway is 5'10. Let me ask you a different question about the lineup, Mr. Cade. Yes, Judge. We saw the picture in your brief of who these people were and what was on page 11. And what's concerning me, frankly, is qualified immunity. I'm looking at that, and I'm trying to figure out where there was a federal law around that was so clear that the police who put together this particular lineup would definitely have known at the time that this was an unduly suggestive lineup. Or that the 32-hour time period, I really see the two aspects. There's the two people with black shoes and only two guys roughly the same height, and they're all wearing pretty much the same clothes. So there's that aspect. And there's also the showing, the photo identification or the exposure to the photograph of Mr. Holloway the day before. But why was this so clear that qualified immunity is not available? Well, the Supreme Court, since at least the Foster v. California case, has talked about unduly suggestive lineups and photographs. And the issue here, Your Honor, is not the lineup itself was unduly suggestive. Yes, we're arguing about height, and I'll come to that in a minute. The problem is, and there is a litany of case law, two of the individuals who were raped, two of the victims, said, M.G. and G.D., we never saw the face of our assailant. So the police, in their infinite wisdom, flash photographs to them. Well, if they never saw them, why are you showing them? Essentially, it's priming them to think about it. Then, 32 hours later, you have it standing up. Now, Judge Adelman says, well, they didn't say anything about the face. They picked based on the voice, and they picked on the general build. Except Judge Adelman specifically said in his opinion on page 9, all five men in the lineup were dressed in identical coveralls to give them the same general shape. Well, but I'm looking at it. I mean, I get that the weights were a little different, but it's baggy clothes that they're wearing. And I'm just – when you use a word like unduly, it makes me nervous when I think about qualified immunity, because that suggests that there's some realm of discretion or some judgments that are being made and that we're going to hold the police personally liable for making the wrong judgment. It's not a question of judgment, and we're not holding them wrong for making the wrong judgment. What we're holding them or seeking to hold them wrong is the quote that I gave at the beginning was from Jones versus the city of Chicago, where the city basically, in showing the photograph, and it's the only person who's – Let me ask Judge Wood's question a different way. An objection was made at trial to the use of the lineup evidence, and the state trial judge said there's no constitutional problem. And the argument was renewed on appeal, and the state appellate court said there's no constitutional problem. And then a federal district judge said there's no constitutional problem. So, so far, five judges have looked at the validity of this lineup, and all five judges have ruled for the defendants in this case. Doesn't that make it very hard to say it's clearly established that any reasonable police officer would have known that this is invalid? Actually, Judge Easterbrook, I beg to defer. What the state court trial judge, Judge Wagner, in the court of appeals said is they looked at the lineup, and they said people appear to be the same skin tone, same height, and everything else. Judge Adelman said there is a difference in height, and only two of the individuals appear to be the same size. But you need to grapple with my question. Five judges have looked at this so far, and all five have said there's no problem with this lineup. You may disagree with the reasons that they have said this, but that's what they've said. Doesn't that make it hard for us to say that any reasonable police officer should have known the opposite of what five judges after full briefing thought? No, Your Honor, and I say that because I keep coming back to the two who identify him in the lineup were shown the photographs, never saw the face of the attacker. Only one individual, R.R., said maybe it might be and couldn't identify him. So the fact that the police were showing photographs to individuals who never saw the attacker is problematic, and I don't think the State Court of Appeals dealt with that issue, and Judge Wagner on the circuit court never dealt with that issue. We then turn to the voice identification. If M.G. and G.D. never saw their attacker, why wasn't all these individuals behind a screen? Because it was just simple expediency for the police. They didn't want to have to have shifts going through the room behind the screen doing the voice. There was no description of this person has this style voice, husky, high-pitched, deep, what have you. The other problems we have, as I've noted, is there were a number of things that Holloway said at the time of his arrest. He said, I have alibis. Well, that was September 30th of 92. The police didn't first look into the alibi until March of 93. There was a bloody knife found from the attack on G.D., and there were fingerprints on that. There was no determination the police ever looked at the fingerprint to say, that's not Holloway. And, in fact, if there was blood, G.D. said, hey, right after I was attacked, I went outside and I saw a car drive away. They never even searched Holloway's car. They searched his home, and they searched his home for two robberies that he had nothing to do with. They never looked for M.G. or G.D. or anyone else. At the end of the day, once they said, we think it's Holloway, they stopped. They didn't look anywhere else, which turns finally to the issue of Al, who was purportedly this neighborhood drunk. Al, we know Tanya Bartoletti, who was the roommate of G.D., wasn't at the lineup. There was the disclosure of Al before the trial without an accompanying motion for continuance, right? In other words, was it a police report? No, it was the D.A. had Tanya Bartoletti. So there was a disclosure of Al. Correct. And then two weeks after, Tanya Bartoletti said, oh, by the way. She's the roommate. She's the roommate, correct. And she saw this guy, saw your guy on the lineup, even though she wasn't there. She thought it was Al. So it was disclosed approximately a week before trial started. That's right. And so wouldn't you say, I need more than a week. This could be game changing for my client. I need a continuance. I don't have enough time to use it. I've got it, but I don't have enough time to use it. I understand that, Your Honor. 1992, speaking to trial counsel, he didn't have a recollection of what specifically took place. I do know that Mr. Holloway had been in custody for over 10 months. And I know that there was an issue with a continuance previously. Judge Wagner had admonished the defense lawyer because he had postponed the trial. And he was made very adamant that he was going to go, or they were going to have this trial. The record is fairly incomplete in terms of what documents are available. As I said, 92, what was saved or destroyed, I only have what the Innocence Project was able to procure. But getting to Al, it is important because not only do we have Tanya Bartoletti, the roommate, but we also have, there was an individual male who lived in the neighborhood, a traveling salesman. He comes back after G.D. is raped, September 26th. He hears about it, and he turns around and he says, oh, well, the day before Friday, there was this guy who's, I can smell alcohol in his breath, and I'm a former alcoholic. And he said his name was Al, and then he saw him again outside the day after. The police knew all of that information, never disclosed, never looked up, never investigated. Because once they had Holloway, they made a determination, we're done. We're not going to look for anybody else. And when you go through the series of all these little things, that deprived Holloway of a fair trial. Because ultimately, there was zero physical evidence other than his general shape and his voice were the only two things that led to his conviction. No semen, no hair, no blood, no fingerprints, nothing. I see that I'm inside of my rebuttal time, Your Honor. I don't know if you're going to ask me a question. Well, certainly, Mr. Cade. Ms. McGowan. May it please the Court. Good morning, Your Honors. My name is Yolanda McGowan with the Office of the City of Milwaukee City Attorney, and I represent the defendant appellants in this matter. The City of Milwaukee and now long-retired detectives Rodzinski, Carlson, Legerman, Harold, and Nowakowski. And on their behalf, I respectfully ask this Court to affirm Judge Adelman's well-reasoned decision granting summary judgment in favor of the defendants and dismissing all of the plaintiff's motions. I ask the judge to make such a determination on two bases. One, on the merits, as pointed out in defendant's briefing, both at the district court level and in this jurisdiction, as well as, and probably more determinatively, based upon Judge Adelman's decision, that there was no violation of any constitutional right held by Mr. Holloway. You know, I'm very concerned about the suggestive nature of the way this lineup was handled and the fact that she'd been shown the picture before. I mean, there's been a lot of study of the way people process information, and here's this face that she's been exposed to 32 hours before the lineup, and she doesn't know she's doing it. I mean, yes, of course Judge Adelman is right. Maybe she says, I recognize the voice or something of the sort, but it's the subconscious influence, and it really taints everything else because his identification in the lineup just begins a cascade of things that happen. He winds up getting arrested. Of course, they don't find anything in his home when they search it, but it's like a snowball going down there, and I really think the essence of the problem here is the suggestive nature of the lineup. Well, Your Honor, I believe that the case law shows that in situations where there is multiple identification procedures used and within short time periods of one another that that could increase the likelihood of a misidentification. In this case, that's not the case. In this case, first and foremost, only one of the witnesses, one of the victim witnesses who observed the photo array identified or let me back up, one of the women who were raped, R.R., viewed the photo array and indicated that Mr. Holloway looked familiar, but she would not be able to make a determination without seeing him in person. She attended the lineup the following day and did not, in fact, identify Mr. Holloway. M.D. was shown the photo array as well, and she, too, the following day in the lineup, reviewed, and she identified him, but she indicated at the time she asked questions and she indicated at the time that it was based on his build, particularly his height and his build, not just his height, but she also indicated that it was based on his voice. Now, this particular witness heard his voice no less than four times. She saw his build multiple times as well, and she indicated 10 out of 10 that she was certain he was the person who attacked her. Well, and people are very confident with these tainted identifications. No one is accusing her of being dishonest or anything. It's a more subtle phenomenon than that. Had she not been shown the photo, G.D., 32 hours before, and he isn't there as kind of standing out of the lineup because he is the shortest one, he is the stockiest one, who knows what she would have thought. She doesn't see the person who's doing this awful stuff to her. Well, forgive me, Judge, if I may say, I don't recall from the record there being, I don't recall there being a situation where he was the stockiest one. He was, in fact, the shortest one. Well, I was just looking at the picture. Okay. I believe in the lineup. And I think he is heavier than the other guys who were in the lineup. And to that point, I want to say two things, if I may. First, I want to correct something that was said by Mr. Cade. Not all of the witnesses identified their attackers as being 5'7 or 5'8. In fact, I believe it was R.R. who said that she's 5'8 and that her attacker was taller than her, taller than she was. The other thing is, Your Honor, that Mr. Holloway was also identified in the lineup by Mr. Humes, one of the neighbors, who had not seen a photo array. So while I do agree and the case law supports that a situation such as this could lead to a misidentification, I assert that did not happen in this case. What's the best case law, in your view, on the other side of the argument, on the side of the argument that you're advancing? Because you do have the concerns that Judge Wood is raising. You have a very short amount of time pass, right, at least after G.D. saw the single photograph that way. So you have this impression, implanting concern. A very short amount of time goes by. And they do a show-off lineup, even though it seems, you can correct me if I'm wrong, but it seems that the two victims that were ultimately the subject of the indictment had said, I never saw his face. I can tell you a little bit about him, build, height, skin color, et cetera, but I never saw his face. But they do a show, they do the facial lineup. In other words, they're not behind a screen just doing voice IDs like Mr. Cade was urging would have been more appropriate. And forgive me, Your Honor, I'm not able to cite a case offhand. I'm thinking U.S. v. Daniel, but I'm not sure that's for the right proposition, and I did not bring those notes with me. That said, and to Mr. Cade's point and to Judge Wood's point as well, and I believe Judge Estabrook indicated when questioning Mr. Cade that five judges have reviewed this, have reviewed the case law. But this is an objective standard, really. I mean, we can't say, oh, we know good old Judge so-and-so, and he or she wouldn't make a mistake. The Supreme Court has distinctly warned us away from that, even in the very deferential area of the Anti-Terrorism Act. So, you know, it's our job to look at this and see if it was, in fact, see if a jury might find reasonably that it was an unduly suggestive lineup. Now, there might be a lot more that would have to be found before these officers would be found responsible for what seems to be a miscarriage of justice, because once the Innocence Project finally gets on this, Mr. Holloway shouldn't have spent a quarter of a century in prison. If I may, Judge, first and foremost, I do recognize that you all review this matter de novo, and I believe that the record is very clear in looking at it, and if you're looking at it, you would be able to come to the same conclusion that the other five judges did, not because they came to it, but because the record reflects the evidence necessary for you to reach that decision. That said, and with respect to the Innocence Project, I will note that with respect to the DNA that was tested, there was a very small sample that was tested from one victim that Mr. Holloway was excluded. So I would assert that while Mr. Holloway's convictions were vacated, I don't believe that he necessarily was innocent of these charges. I thought in this instance, maybe Mr. Cade can tell me, but I thought the state courts actually took that last step. They vacated the judgment, but I don't believe the stipulation that led to the dismissal of those charges actually indicated that Mr. Holloway had not committed the crimes. It's just that he was excluded along with the victim's husband based on the DNA sample that they had, if I'm not mistaken. Yeah, I mean, just as October 4, 2016, Judge Wagner, the same judge who had sentenced him 23 years earlier, vacated Holloway's convictions and rendered him innocent as a matter of law. So that's what it says. In your opponent's brief, maybe you disagree with that. My reading of the stipulation in order that led to Judge Wagner's dismissal of the case did not conclude that he was in fact innocent. Okay. So yes, I do disagree with that representation. I see you're still looking, but if I may? No, don't worry. I'll find what I need. So in addition to the, so now withstanding the lineup and all the issues there, one main point I do want to bring home is the issue of qualified immunity and the fact that all of these officers acted at the time. First of all, there was no constitutional violation, I believe, committed by any of these officers. But even if it were in hindsight determined that there were some kind of violation that took place, I believe these officers are immune from liability on the basis of qualified immunity. They acted according to all standard police protocols. There were several very brutal rapes of young women going on. And this goes back to the lineup as well. They acted urgently. They needed to rule out suspects. And so showing Mr. Holloway's picture to two of the victims was urgent. And there is a case on point that I cannot think of at this precise moment. But there's a case precisely on point. Given the urgency of the matter and the need to protect these witnesses, and as Mr. Kaye pointed out, there were a slew of rapes by black men with white victims. And so showing Mr. Holloway's photo to two of the victims was a way to kind of get to are we going in the right direction? Because we don't want to waste any time because these women are being raped. It was in no way to prejudge the situation. In fact, Mr. Holloway was pointed to Detective Carlson by the Whitefish Bay and Shorewood Police Department, thank you, as a suspicious person who had been seen prowling in the area during the time these rapes were occurring. So everything these officers did, they did based on the evidence that was before them. They didn't cook up any evidence. They didn't ignore any evidence. They followed down the leads as they led them. And after- I don't know. The evidence around the arrest was thin. It may have been enough, but it was thin. And- I mean, the one it was, help me out on the initials, was it K.R.? Or R.R.? R.R. R.R., who he was not charged. He was not charged. No, I know, but that was the basis for the arrest, right? R.R. said, I think that looks like, but I can't be 100% sure. And then based upon the prowling incident- And his prior 1985 conviction for a rape that was occurred with the very same modus operandi as the rapes were occurring. Again, given the urgency of the situation, given the gravity- But the urgency doesn't allow the police to just sweep up people, you know, and arrest them. Yeah, you still have to show probable cause. Even though there's no identification. And that's not what happened in this case. Again, there were a number of factors that the officers were confronted with when investigating this matter. Again, they were aware, pursuant to the Sherwood Police Department and the Whitefish Bay Police Department, that he had been prowling in the area and had been arrested. He came back, Detective Carlson did, did his research and found that Mr. Holloway was on parole for a rape of the same fashion. He showed a photo ID to R.R. and to a second victim, neither of whom said, well, it's not him. They said they weren't sure. They gave tentative IDs. And the case law supports that a tentative ID gives rise to probable cause. I thought G.D. wasn't able to identify at all. And it was R.R. who gives this wishy-washy, well, it's a little bit like the attacker. As, you know, half the black men of that age would. Yeah, G.D. didn't have anything to do with the arrest decision. It was R.R., as Judge Wood is indicating. And so based on R.R.'s tentative identification, based on Mr. Holloway's- You think that amounts to probable cause to arrest a person? I don't think solely, no. But I think the totality of the circumstances, based upon the situation, the officer at the time made a decision to explore further to do basically his job, which is to investigate, protect, and serve. He was conclusively, Mr. Holloway being the he, was conclusively identified by two of the victims, I believe by two of the victims during the lineup, as well as identified by Mr. Humes, who I actually, if I recall correctly, identified him as representing himself as being Al, who he may have given a ride to on a couple of occasions. So I believe that, yes, the officer, based on the information that he had, had probable cause to believe that it was to take- Yes, thank you, counsel. Thank you. Anything further, Mr. Kade? A couple of points, Your Honor. First of all, my adversary is incorrect. She indicated that R.R. had indicated that the attacker was taller. That's incorrect. It was another individual, K.R. She was attacked in July. The allegations, R.R. was the one. She was the oldest of all the victims. I actually met with her, still lives in the same home, and she said the guy reeked of smoke, and how he's holding a knife, he was right-handed. Nowhere to be found. With regards to Mr. Holloway, yes, he was on parole. And what the police could have done, if it was so urgent, is bring up his probation officer, parole officer, and said, hey, bring him in so we can ask a few questions. They didn't do that. They rushed out. He volunteered. I have alibis. They never looked at any of the alibis. There was a question about qualified immunity. At the end of the day, again, it was not only thin with regards to the arrest, it was paper thin. The police, they rushed, because once they had that name, they weren't doing anything else. I take very little stock in Shorewood and Whitefish Bay. Whitefish Bay, for years, especially in the 90s and 2000s, was known as White Folks Bay. It was very racist, so the fact that Shorewood and Whitefish Bay said, oh, we found a black guy prowling, that just made it easy for Carlson to haul him in. He didn't look for anyone else. Hold on. Can I ask you a question about that, just as a factual matter? Yes. I thought it was more specific that we saw a black man prowling. I thought it was this particular defendant had been arrested by the Shorewood Police Department for prowling. He was out of his car, and he was arrested for prowling. That is correct. That was the only thing they charged him for. It was basically a municipal ticket that they had. So, hey, Carlson says, do you have any black males? He said, yeah, we just happened to arrest a guy a few weeks ago on immunity because he was out of his car. Yeah, but that person so happened to be the defendant. I mean, look, I think you're right on it's thin that way, but we're talking about the defendant on the prowling, right? Correct. To get to Judge Wood, he was declared actually innocent as a matter of law. Otherwise, I couldn't bring this lawsuit to do it. And not only did Judge Wagner file that, the state of Wisconsin Compensation Board last month filed it. And now you've got someone from the governor's office, the legislature, Republican-controlled, five individuals all said, yeah, he was innocent as a matter of law. And I can provide that if the court would like it. Thank you. Oh, I'm sorry. Thank you. Thank you, Mr. Cage.